ABRAHAM EDWARDS *vs.* THOMAS SUMNER.

An attachment of personal property, which is sold on the writ, pursuant to the provisions of the Rev. Sts. *c.* 90, §§ 57, 61, is dissolved by the insolvency of the debtor, in the same manner as if the property remained unsold, whether the creditor or the officer have knowledge of the insolvency or not; provided the first publication of notice of the insolvency takes place before the proceeds of the sale are seized on the execution; and if the officer, without notice of the debtor's insolvency, pay over such proceeds to the judgment creditor, after the first publication of notice of the insolvency, he may recover back the same of the creditor.

THIS was an action of assumpsit for money had and received, tried before *Fletcher*, J.

The defendant, who is a deputy sheriff, on or about the 10th of December, 1845, attached certain horses and other chattels, as the property of one John Friend, on a writ against him in favor of James Ricker, and sold the property on the writ, pursuant to the Rev. Sts. *c.* 90, § 61. The net proceeds of the sale, as appeared by the return, amounted to $559·60. The action was entered at the next March term of the court of common pleas, to which the writ was returnable, and was continued to the following December term, when the defendant therein was defaulted. Judgment was thereupon rendered against him, on the 4th of January, 1847, in favor of the plaintiff Ricker, for the sum of $544·98; upon which judgment an execution was sued out on the 13th of the same January, and committed to the defendant for service; who, on the next day, levied the same on the proceeds of the property attached, and on the 23d of the same month, paid the amount of the execution to the attorney of the judgment creditor, leaving a balance in his hands of $4·47.

On the 5th of January, 1847, John Friend, the judgment debtor, applied by petition for the benefit of the insolvent law; on the 6th, a warrant was accordingly issued to a messenger; and on the 7th, the first publication of notice of the insolvency took place. The first meeting of creditors was held on the 1st of February following, at which the plaintiff Edwards, was chosen assignee and accepted the trust.

The plaintiff demanded of the defendant the net proceeds of the sale of the property attached, some time in the spring of the year 1847; and, afterwards, before the commencement of the action, the defendant tendered to the plaintiff the balance above mentioned of $4·47, which the plaintiff refused to receive.

There was no evidence, that the defendant, at any time before paying over the proceeds of the sale to the judgment creditor, had any notice or knowledge, actual or constructive, of the proceedings in insolvency, except as above stated.

Upon these facts, the defendant contended that the action could not be maintained, but the judge ruled otherwise, and instructed the jury, that the plaintiff was entitled to a verdict, which was rendered accordingly for the whole sum demanded. To these instructions the defendant excepted.

*B. R. Curtis* and *G. W. Warren*, for the defendant, argued, that although the publication of notice would affect the creditor, it would not affect the officer, no actual notice being shown. And they referred to Story, Bailm. §§ 125–135, 207, 208, 620; *Badlam* v. *Tucker*, 1 Pick. 389, 395; Story, Ag. §§ 265, 470; 2 Liverm. Ag. 307, 308, 310; *Salte* v. *Field*, 5 T. R. 211; —— v. *Harrison*, 12 Mod. 346; *Hazard* v. *Treadwell*, 1 Stra. 506; *Morgan* v. *Stell*, 5 Bin. 305, 316; *Sadler* v. *Evans*, 4 Bur. 1984; *Greenway* v. *Hurd*, 4 T. R. 553; *Bacon* v. *Leonard*, 4 Pick. 277; *Tope* v. *Hockin*, 7 B. & C. 101; S. C. 9 D. & R. 881; Chit. Con. 611; *Coppendale* v. *Bridgen*, 2 Bur. 814, 818; *Allanson* v. *Atkinson*, 1 M. & S. 583; *St.* 6 Geo. IV. *c.* 83; *Sowerby* v. *Brooks*, 4 B. & Ald. 523.

*A. H. Nelson*, for the plaintiff.

METCALF, J. By the Rev. Sts. *c.* 90, §§ 57, 61, the proceeds of personal property which is attached, and is sold before judgment is recovered against the owner, "shall be held by the officer, subject to the attachment or attachments, and shall be disposed of in like manner as the said property would have been held and disposed of, if it had remained unsold." Now, if the goods, which the defendant attached, had remained unsold, and had not been seized in execution

before the first publication of notice, they must have been given up to the plaintiff; because the attachment would have been dissolved by the assignment of Friend's estate to him. And for the like reason, the money, which the defendant received on the sale of the goods, must be given up, "in like manner," unless the defendant is excused by want of actual notice of the proceedings in insolvency, before he paid over the money to the attaching creditor. *Wheelock* v. *Hastings*, 4 Met. 504. And we are of opinion that he is not so excused. By the insolvent law, (*St.* 1838, *c.* 163, § 5,) the assignment vests in the assignee all the debtor's property, which he could, by any way or means, have lawfully sold, assigned or conveyed, or which might have been taken in execution on any judgment against him, at the time of the first publication of the notice of issuing the warrant to the messenger, although the same may then be attached as the property of the debtor; and such assignment is effectual to pass all said property, and dissolve any such attachment, and to vest in the assignee all debts due to the debtor, or to any person for his use, and all his rights of action for any goods or estate. By the assignment in this case, therefore, the attachment of Friend's property was dissolved, and the right to the money in the defendant's hands was vested in the plaintiff, from the 7th of January, 1847, when the first publication of notice was made. And the defendant did not receive the execution, on which he applied the money, in discharge of the attaching creditor's judgment, till six days afterwards.

It is by the legal operation of the assignment, and not by actual notice to creditors or officers, that the debtor's property is vested in the assignee, and that attachments thereof are dissolved. Publication of notice is the decisive fact in this matter, and is notice, actual or constructive, by which all parties are bound. Even actual notice, before publication, will not affect an attaching creditor's rights. *Clarke* v. *Minot*, 4 Met. 346. In that case, the chief justice said, " We are now seeking to ascertain and fix the point of time intended by the statute as the time at which all the property of the

debtor is changed, and his power over it suspended; that point, in other words, prior to which all payments, made by him or to him, all conveyances (not fraudulent) made by him, all seizures, levies and extents of execution upon his property, shall be held valid, and all those made after void. The time of publication was fixed, obviously, because that act would, in most cases, afford actual notice to those immediately interested; and it was intended as constructive notice to all."

Suppose that Friend had died insolvent on the day before he petitioned for the benefit of the insolvent law. The attachment would have been dissolved, provided administration had been taken on his estate, within a year; and the money in the defendant's hands would have been payable to the administrator, for the benefit of all the creditors. Rev. Sts. *c.* 90, § 105. Could it be pretended that the defendant, in such case, if he had paid over the money to the attaching creditor, could resist the claim of the administrator, on the mere ground of want of notice of Friend's death?

There is no more hardship in the present case than in any other in which an officer, for want of notice, takes the property of one person, on a writ or execution against another. He may, in all cases, take an indemnity beforehand; and in this case he is entitled to recover back the money from the creditor to whom he paid it.       *Judgment on the verdict*